UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PHILADELPHIA INDEMNITY
INSURANCE COMPANY                                                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:09-cv-347-CRS

YOUTH ALIVE, INC. ET AL.                                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on cross motions for summary judgment between the plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") and defendant Youth Alive, Inc. ("Youth Alive"), (DNs 60, 62).[1]

The facts in this case are undisputed. This action arose out of a car crash which killed four children who participated in a youth event run by defendant, Youth Alive, Inc. ("Youth Alive"). The children had been transported to the event in three vans owned by Youth Alive. Another event participant, 16-year-old Herbert Lee ("Lee"), also traveled to the youth event in a 1991 Honda. After the youth event concluded, Youth Alive was having trouble fitting all the participants into the three vans owned by Youth Alive for transport to their homes. One Youth Alive employee noticed that Lee was driving alone in the Honda and stopped him as he was leaving. She requested that Lee drive four other youth participants, Jemar Claybrooks, Demar Claybrooks, Marc Claybrooks, and Aaron Shields from the youth event to their homes, located nearby.

---

[1] We do not rule on the motion of the plaintiff, Philadelphia Indemnity to dismiss bad faith counterclaims by Youth Alive (DN 53). The Court has permitted Youth Alive to amend its Answer asserting counterclaims, thus rendering the motion to dismiss and briefing based on the original counterclaims moot.

- 2 -

Unbeknownst to Youth Alive employees, the car which Lee was driving had actually been stolen from an individual during a carjacking and Lee did not have a driver's license. After Lee drove away with the four children, an officer from the Louisville Metro Police Department observed Lee driving erratically and ran the license plate for the Honda. The officer discovered that the car had been reported stolen during a carjacking and tried to stop Lee. Lee attempted to evade the police and in doing so, lost control of the vehicle and hit a tree. The four children in the car with Lee were killed. Lee was subsequently charged with and convicted of manslaughter, fleeing or evading the police, receiving stolen property, and operating a motor vehicle without an operator's license. *See* Commonwealth of Kentucky, Jefferson Circuit Court, Criminal Division, Action No. 09CR1095-3, April 2009 (DN 62, Exhibit 18).

After the accident, the estates of the four children brought lawsuits against Youth Alive, alleging that Youth Alive was negligent in placing or allowing the youth event participants to be placed in a vehicle with Lee. (DN 60, Exhibits 9, 10). Youth Alive notified Philadelphia Indemnity of the claims and sought both a defense and indemnification under its commercial general liability policy ("CGL Policy") and its commercial excess liability policy ("Excess Policy") with Philadelphia Indemnity. Philadelphia Indemnity provided a defense to Youth Alive but issued a reservation of rights letter, denying coverage or indemnity under the commercial general liability policy, relying on "exclusion (g)" in the Policy. Philadelphia also issued a second reservation of rights letter asserting that coverage was also not available under the Excess Policy.

Philadelphia then filed this declaratory judgment action seeking a declaration that coverage does not exist under the CGL Policy and the Excess Policy for any claim arising from the accident involving Lee and the four other Youth Alive participants (DN 1). Youth Alive filed its Answer

(DN 13), and then an Amended Answer and Counterclaim, asserting bad faith counterclaims against Philadelphia (DN 52). Philadelphia Indemnity filed a motion for summary judgment (DN 60) on its declaratory judgment claim. Youth Alive also filed a motion for summary judgment (DN 62), seeking a judgment that Philadelphia Indemnity must provide coverage under both policies.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Id*. at 587; *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Under Kentucky law, an insurance contract must be "liberally construed and all doubts resolved in favor of the insureds." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d

164, 166 (Ky. 1992). The terms used in the insurance policies should be interpreted as they would be by the "average man." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). Exclusions must be interpreted narrowly, with any questions resolved in favor of finding coverage, because exclusions are "contrary to the fundamental protective purpose of insurance." *Kemper Nat'l. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873-74 (Ky. 2002); *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky. 1992). Kentucky courts have adopted the "doctrine of ambiguity," which mandates that if an insurance contract is ambiguous, any doubts as to its construction must be resolved in favor of the insured. *Woodson v. Manhattan Life Ins. Co. of N.Y.*, 743 S.W.2d 835, 838 (Ky. 1987).

The exclusion which Philadelphia Indemnity relies on in seeking to deny coverage is "exclusion (g) Aircraft, Auto or Watercraft" in the CGL Policy. Exclusion (g) provides that "bodily injury ... that arises out of the ownership, maintenance, use or entrustment to others of any ... auto...owned or operated by or rented or loaned to *any insured*" is excluded from coverage. (DN 60, Exhibit 11) (emphasis added). Philadelphia Indemnity further relies on language from the CGL Policy which states that this exception applies

> even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury ... involved the ownership, maintenance, use or entrustment to others of any ... auto... that is owned or operated by or rented or loaned to any insured.

*Id*. It is undisputed that Youth Alive did not own, rent, or loan the Honda at issue. Therefore, for this exclusion to be applicable, Lee must be considered an "insured" under the definitions set out in the CGL Policy. Philadelphia Indemnity argues that Lee is an "insured" either under the CGL

Policy's definition of a "volunteer worker" or because Lee should be considered to have the status of a "member" under an endorsement to the CGL Policy.

The CGL Policy defines who is an "insured" by providing:

**Section II – Who Is An Insured**
1. If you are designated in the Declarations as:
\*\*\*
d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
\*\*\*
2. Each of the following is also an insured:
a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

*Id*. The CGL Policy then defines a "volunteer worker" as:

a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed by you.

*Id*.

Reviewing all the pleadings and evidence, we do not find that Lee is a "volunteer worker" as defined in the CGL Policy, and therefore cannot be considered "an insured" for purposes of the automobile exclusion. We consider how an "average man" would interpret the term "volunteer worker" in "light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *See James Graham Brown Found., Inc.,* 814 S.W.2d at 279.

Lee did not volunteer or offer to "donate his time" to work for Youth Alive. Lee's mother submitted applications for Lee to be a child participant in the program, so that he could benefit from Youth Alive's services to the community. Lee was spontaneously asked to drive four other kids home, along with himself, as they lived very near to that particular youth event. Lee's compliance with the request does not transform him into a "volunteer worker" under the Policy. Lee was not given a "scope of duties" as contemplated by the CGL Policy. Further, Youth Alive required volunteer workers to file applications and be of a certain minimum age, and have experience and abilities. Youth Alive required its volunteer workers to go through training, because its volunteers worked with troubled youths and would be taking care of children in the community. We do not find that an average person considering the circumstances of the organization would conclude that one of Youth Alive's own child participants could constitute a "volunteer worker" under the definition of the CGL Policy and common understanding.

We also find that Lee is not a "club member" under the endorsement that was issued with Youth Alive's CGL Policy.[2] The endorsement provides that "who is an insured (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf." (DN 60, Exhibit 15, p. 37). Neither the

---

[2] There does appear to be a dispute as to whether the "club member" endorsement to the CGL Policy was validly issued. Youth Alive asserts that Youth Alive did not request the endorsement and that it was Philadelphia Indemnity's practice that the insured was responsible for the inclusion of the endorsement. (DN 67, p. 13) (citing DN 67, Exhibit 3, Affidavit of John Lavelle, insurance agent; DN 67, Exhibit 5, Philadelphia's Discovery Responses). Youth Alive further argues that it did not meet the requirements for a "club" under this endorsement and that it should not have been issued and is invalid. *Id*. at 14. On the other hand, Philadelphia Indemnity asserts that Youth Alive's own insurance agent, John Lavelle, provided the 41668 "club" classification for Youth Alive on its May 2004 application. (DN 71, p. 7) (citing DN 71, Exhibit 1, Affidavit of Margie Calderone). Philadelphia Indemnity maintains that the club members endorsement was validly issued. *Id*. We do not decide here whether the club endorsement issue was validly issued, because we find coverage exists even with the club members endorsement amendment applied to exclusion (g).

CGL Policy nor the relevant endorsement defines the term "member" or explains the other phrases in the endorsement.  However, The CGL Policy is a standard-form insurance policy and was developed by a separate company, the Insurance Services Office, Inc. ("ISO").  ISO develops standard policy forms that are used across the country and most CGL insurance written in the United States is written on these forms.  *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993).  ISO provides a classification table to aid insurers in properly using its standard-form insurance policies.  The club member endorsement was included with the CGL Policy because Philadelphia Indemnity classified Youth Alive under a specific ISO commercial general liability class known as "Club-Civic-Bldg 41668."  (DN 67, Exhibit 5).  According to the ISO classification table, classification Club-Civic-Bldg 41668 applies only "to clubs which charge a membership fee to join, may assess fees to cover expenses and/or liabilities, and provide that members oversee activities or elect directors, officers or management."  (DN 67, Exhibit 3).

    Lee does not constitute a "member" under this classification.  Youth Alive did not charge membership fees to the children.  (DN 62, Exhibit 7, Affidavit of Kenny Boyd, Youth Alive Founder ¶ 15).  Youth Alive also did not permit children to "oversee activities or elect directors, officers, or management," as described in the classification table.  *See* (DN 67, Exhibit 4, Affidavit of Woody Northup, Youth Alive board member, ¶ 26-32) (the "officers of Youth Alive were responsible for overseeing the activities of the program, and the Board of Directors of Youth Alive were responsible for electing directors, officers or management of Youth Alive.  Herbert Lee and the other children in the program did not have these responsibilities"); (DN 62, Exhibit 4, Youth Alive's bylaws).  Lee was merely a youth participant in a non-profit organization.  Thus, Lee is not a "club member" as contemplated by the endorsement classification.

Even disregarding the ISO classification table, an average person would not interpret a "club member" to include a participant in a non-profit organization which provides "educational support and delinquency prevention/intervention services to at-risk youth of economically disadvantaged neighborhoods." *See* (DN 60, Exhibit 2, Youth Alive's Mission Statement). Youth Alive is a service organization and not a "club" with members. Under Kentucky law, non-profit corporations are either membership organizations or non-membership organizations. KRS § 273.187(1). Youth Alive's Articles of Incorporation expressly provide that Youth Alive "shall have no members except as may be provided by the bylaws hereafter duly adopted by the directors." (DN 62, Exhibit 3, Youth Alive's Articles of Incorporation). Youth Alive's bylaws also did not provide for members. (DN 62, Exhibit 4, Youth Alive's bylaws). Therefore, Lee would not be considered a "club member" of Youth Alive, but rather a child participant in the non-profit organization.

At best, the inclusion of the club member endorsement makes the Policy exclusion ambiguous as applied to the circumstances of Youth Alive. *See Motorists Mutual Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680 (Ky. App. 1996) ("[b]ecause there is nothing inherently ambiguous in the language employed, any ambiguity necessarily arises in the application of the provision to the specifics of a particular claim") (citing *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994)). Any doubts must be resolved in favor of the insured, and any ambiguous terms must be construed to favor coverage rather than exclusions, which are "contrary to the fundamental protective purpose of insurance." *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 873-74.

Therefore, we find that exclusion (g) of the CGL Policy does not exclude coverage for the accident involving Lee in this case. Lee was not "an insured" as provided in the CGL Policy or the

club member endorsement. Thus, Lee's actions on the night of the accident are not, on those bases, excluded from coverage under the CGL Policy. Youth Alive's motion for summary judgment will be granted in part.

Philadelphia Indemnity also seeks a declaratory judgment that coverage does not exist under Youth Alive's Excess Policy. It is undisputed that the Excess Policy was in effect at the time of the accident. Philadelphia Indemnity argues that coverage is excluded under a similar automobile exclusion contained in the Excess Policy.

The Excess Policy excludes from coverage liability for claims that arise out of an automobile accident by providing:

> **Automobile Liability Exclusion**
>
> This insurance does not apply to any liability arising out of the ownership, operation, maintenance, use, loading or unloading or entrustment to others of any "auto" as defined in the Commercial General Liability policy listed in the Schedule of Underlying Insurance.

(DN 60, Exhibit 18). The "Commercial General Liability policy listed in the Schedule of Underlying Insurance " refers to the CGL Policy. The CGL Policy defines an "auto" as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." (DN 60, Exhibit 15).

It appears the automobile liability exclusion in the Excess Policy is broader than the CGL Policy's exclusion (g). Exclusion (g) only excluded bodily injury from autos that were "owned or operated by or rented or loaned to any insured." (DN 60, Exhibit 11). The Excess Policy automobile exclusion is not so restricted. It applies to liability arising out of any "auto" as defined in the CGL Policy, which is a broad definition that encompasses all land motor vehicles. Therefore, the liability in this case, stemming from Lee's operation of an automobile, is excluded from

coverage under the Excess Policy's more expansive automobile exclusion.  Philadelphia Indemnity is not obligated to provide coverage to Youth Alive under its Excess Policy and its motion for summary judgment will be granted in part.

An order consistent with this opinion will be entered this date.