UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,                                                    PLAINTIFF


v.                                                  CIVIL ACTION NO. 3:09-cv-347-CRS


YOUTH ALIVE, INC., ET AL.                                              DEFENDANTS


**MEMORANDUM OPINION**


This matter is before the court on motion of the defendant, Youth Alive, Inc. ("Youth Alive")

(DN 90) to alter the judgment of this court issued February 13, 2012 (DN 86).  Also before the court

is a motion of the plaintiff, Philadelphia Indemnity Insurance Company, ("Philadelphia Indemnity")

to dismiss the counterclaim of Youth Alive against it for bad faith.  (DN 88).  For the reasons set

forth below, Youth Alive's motion to amend will be denied and Philadelphia Indemnity's motion

to dismiss will be granted.

I. BACKGROUND

As set forth in the court's memorandum opinion entered February 13, 2012 (DN 86), this

action arose out of a car crash which killed four children who participated in a youth event run by

Youth Alive.  The children had been transported to the event in three vans owned by Youth Alive.

Another event participant, 16-year-old Herbert Lee ("Lee"), also traveled to the youth event in a

1991 Honda.  After the youth event concluded, Youth Alive was having trouble fitting all the

participants into the three vans owned by Youth Alive for transport to their homes.  One Youth

Alive employee noticed that Lee was driving alone in the Honda and stopped him as he was leaving.

She requested that Lee drive four other youth participants, Jemar Claybrooks, Demar Claybrooks, Marc Claybrooks, and Aaron Shields from the youth event to their homes, located nearby.

Unbeknownst to Youth Alive employees, the car which Lee was driving had actually been stolen from an individual during a carjacking and Lee did not have a driver's license.  After Lee drove away with the four children, an officer from the Louisville Metro Police Department observed Lee driving erratically and ran the license plate for the Honda.  The officer discovered that the car had been reported stolen during a carjacking and tried to stop Lee.  Lee attempted to evade the police and in doing so, lost control of the vehicle and hit a tree.  The four children in the car with Lee were killed.  Lee was subsequently charged with and convicted of manslaughter, fleeing or evading the police, receiving stolen property, and operating a motor vehicle without an operator's license. *See* Commonwealth of Kentucky, Jefferson Circuit Court, Criminal Division, Action No. 09CR1095-3, April 2009 (DN 62, Exhibit 18).

After the accident, the estates of the four children brought lawsuits against Youth Alive, alleging that Youth Alive was negligent in placing or allowing the youth event participants to be placed in a vehicle with Lee. (DN 60, Exhibits 9, 10).  Youth Alive notified Philadelphia Indemnity of the claims and sought both a defense and indemnification under its commercial general liability policy ("CGL Policy") and its commercial excess liability policy ("Excess Policy") with Philadelphia Indemnity.  Philadelphia Indemnity provided a defense to Youth Alive but issued a reservation of rights letter, denying coverage or indemnity under the commercial general liability policy, relying on "exclusion (g)" in the Policy.  Philadelphia also issued a second reservation of rights letter to Youth Alive, asserting that coverage was also not available under the Excess Policy.

Philadelphia then filed a declaratory judgment action seeking a declaration that coverage does not exist under the CGL Policy and the Excess Policy for any claim arising from the accident involving Lee and the four other Youth Alive participants (DN 1).  Youth Alive filed its Answer (DN 13), and then an Amended Answer and Counterclaim, asserting bad faith counterclaims against Philadelphia (DN 52).  Philadelphia Indemnity filed a motion for summary judgment (DN 60) on its declaratory judgment claim.  Youth Alive also filed a motion for summary judgment (DN 62), seeking a judgment that Philadelphia Indemnity must provide coverage under both policies.

Pursuant to the ruling entered February 13, 2012, we held that Philadelphia was obligated to provide defense and indemnity under the CGL Policy it issued to Youth Alive, but that coverage did not exist under the Excess Policy because the automobile exclusion applied.  (DNs 84, 85).  Youth Alive has now filed a motion to alter or amend that judgment, arguing that our ruling on the coverage issue under the Excess Policy was based on grounds not raised by the parties.  (DN 90).  Philadelphia has also filed a motion to dismiss the counterclaims of Youth Alive asserting bad faith, violations of the Kentucky Unfair Claims Settlement Practice Act, and seeking attorneys fees.  (DN 88).

## II. YOUTH ALIVE'S MOTION TO ALTER OR AMEND JUDGMENT

First, we consider Youth Alive's motion to alter or amend the judgment entered by this court on February 13, 2012.  (DN 90).  Motions to alter or amend a judgment pursuant to Fed.R.Civ.P. 59(e) are "extraordinary" in nature and should be "sparingly granted." *Buckner v. Kentucky*, 2011 WL 1304747 at *1, 2011 U.S. Dist. LEXIS 36956 (E.D. Ky. April 5, 2011) (citing *Marshall v. Johnson*, 2007 WL 1175046 (W.D. Ky. Apr. 19, 2007)).  The court may grant a Rule 59(e) motion only in limited circumstances: if there is (1) a clear error of law; (2) newly-discovered evidence; (3)

an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). "Rule 59(e) does not provide parties a forum to present new arguments or theories that, with proper diligence, could have been asserted prior to the judgment being issued." *Buckner*, 2011 WL 1304747 at *1 (citing *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008); *Gen Corp*, 178 F.3d at 834).

Youth Alive argues that pursuant to Fed.R.Civ.P. 56(f), it is entitled to present further arguments or evidence because this court's previous ruling was based upon grounds not raised by either party. (DN 90-1). Fed.R.Civ.P. 56(f) provides that "[a]fter giving notice and a reasonable time to respond, the court may (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Rule 56(f) is thus grounded in notions of fairness by allowing the adversely affected party an opportunity to respond when a court determines that a motion should be granted on grounds not raised by the parties. *See Richeson v. Select Comfort Retail Corp.*, 2011 WL 5434019, 2011 U.S. Dist. LEXIS 129361 (N.D. Ohio Nov. 8, 2011) (providing parties with notice and a reasonable time to respond when addressing a ground not raised by either party).

Youth Alive argues that Philadelphia Indemnity did not argue that the Excess Policy's automobile exclusion was broader than the CGL Policy's automobile exclusion. Youth Alive asserts that therefore, the court's ruling, which noted that "[i]t appears the automobile liability exclusion in the Excess Policy is broader than the CGL Policy's exclusion (g)," rested on grounds not argued by either party and Youth Alive should have been provided an opportunity to respond.

- 4 -

However, we disagree and do not find Fed.R.Civ.P. 56(f) applicable here, as the previous ruling by this court was decided on grounds raised by the parties.  Youth Alive and Philadelphia Indemnity both moved this court for summary judgment, requesting that the court interpret the exclusionary language from both the CGL Policy and the Excess Policy.  Philadelphia Indemnity treated the CGL Policy and the Excess Policy separately in its motion papers and raised the precise grounds on which the court's holding rested, namely that the automobile exclusion within the Excess Policy applied because the underlying claim arose from an automobile accident.  Philadelphia Indemnity provided the Excess Policy language on which this court's opinion relied and specifically argued that "because the bodily injury at issue in the underlying tort actions brought by the estates of the Claybrooks brothers and Shields arises from Lee's use and operation of an 'auto,' there is no coverage available to Youth Alive or Lee under the Excess Policy."  (DN 60-1, p. 12-13).  Philadelphia Indemnity did not explicitly argue that one exclusion was broader than the other and also alternatively argued that Lee being an "insured" prevented coverage under the Excess Policy.  However, the court's holding rested on the fact that the underlying claim arose from an automobile accident, which was specifically raised by Philadelphia Indemnity.

It is well-settled under Kentucky law that the proper interpretation, construction, and legal effect of an insurance contract are matters of law to be decided by a court.  *Cincinnati Ins. Co. v. Motorist Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010); *Bituminous Casualty Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007); *Hugenberg v. West Am. Ins. Co.*, 249 S.W.3d 174, 185 (Ky. Ct. App. 2006).  In the absence of ambiguity, "a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language

its ordinary meaning and without resort to extrinsic evidence." *Hazard Coal Corp. v. Knight*, 325

S.W.3d 290, 298 (Ky. 2010) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)).

In the memorandum opinion entered February 13, 2012, we quoted the "Automobile Liability

Exclusion" from the Excess Policy, which stated:

> This insurance does not apply to any liability arising out of the ownership, operation, maintenance, use, loading or unloading or entrustment to others of any "auto" as defined in the Commercial General Liability policy listed in the Schedule of Underlying Insurance.

(DN 86). We then recognized the broad definition of an "auto" provided in the CGL Policy and

noted that "the automobile liability exclusion in the Excess Policy is broader than the CGL's Policy

exclusion (g). Exclusion (g) only excluded bodily injury from autos that were 'owned or operated

or rented or loaned to any insured.'" *Id*. (quoting the CGL Policy language). We then held that "the

liability in this case, stemming from Lee's operation of an automobile, is excluded from coverage

under the Excess Policy's more expansive automobile exclusion." *Id*. Thus, our holding rested on

the automobile exclusion of the Excess Policy and the fact that the underlying claim stemmed from

the operation of an automobile. This is identical to the argument made by Philadelphia Indemnity

in its motion for summary judgment when it argued that because the underlying claim "arises from

Lee's use and operation of an 'auto,' there is no coverage available to Youth Alive under the Excess

Policy." (DN 60-1, p. 12-13).

Therefore, we hold that Youth Alive is not entitled to relief pursuant to Fed.R.Civ.P. 59(e)

and Fed.R.Civ.P. 56(f) is not applicable, because the court's ruling rested on grounds raised by

Philadelphia Indemnity. A Rule 59(e) motion "is not an opportunity to re-argue a case" nor an

avenue to raise arguments that "could have, but [were] not" raised before. *See Sault Ste. Marie*

*Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).  Youth Alive's motion to

amend or alter the judgment will thus be denied.

### III. PHILADELPHIA INDEMNITY'S MOTION TO DISMISS BAD FAITH CLAIMS

Before the court is also Philadelphia Indemnity's motion to dismiss the bad faith

counterclaims of Youth Alive.  (DN 87).  When a motion to dismiss is made, the court accepts the

well-pleaded facts of the complaint as true and construes the complaint in the light most favorable

to the plaintiff, drawing all reasonable inferences in favor of the plaintiff.  *Directv, Inc. v. Treesh*,

487 F.3d 471, 476 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.

1987).  The complaint may be dismissed "if it is clear that no relief could be granted under any set

of facts that could be proved consistent with the allegations." *Morgan*, 829 F.2d at 12.

Youth Alive asserts a common law claim for bad faith, a claim under Kentucky's Unfair

Claims Settlement Practices Act, KRS § 382.12-230, and the applicable regulations, and a claim

under KRS § 304.12-235(3) for attorney's fees.  (DN 81, 88-105).  Under Kentucky law, to support

a claim for bad faith, an insured must allege that: (1) the insurer is "obligated to pay the claim under

the terms of the policy;" (2) the insurer lacks a "reasonable basis in law or fact for denying the

claim;" and (3) the insurer either "knew there was no reasonable basis for denying the claim or acted

with reckless disregard for whether such a basis existed."  *Wittmer v. Jones*, 864 S.W.2d 885, 890

(Ky. 1993).  This standard is identical for claims under both common law and Kentucky Unfair

Claims Settlement Practices Act.  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir.

2006).

Philadelphia Indemnity first argues that Youth Alive's claim for bad faith and a violation of

Kentucky's Unfair Claims Settlement Practices Act with regard to Philadelphia Indemnity's

disputing coverage under the Excess Policy fails because Youth Alive cannot prove the first element

of a claim for bad faith.  We agree that because the court has already ruled that no coverage exists

under the Excess Policy (DNs 86, 87), Youth Alive cannot establish that the insurer is "obligated

to pay the claim under the terms of the policy," as required by *Wittmer*.  864 S.W.2d at 890.

Therefore, we will grant Philadelphia Indemnity's motion to dismiss with regard to Youth Alive's

bad faith claim based on the Excess Policy.

Philadelphia Indemnity also seeks to dismiss Youth Alive's bad faith claim with regard to

the CGL Policy.  Philadelphia Indemnity concedes that Youth Alive can establish that Philadelphia

Indemnity is obligated to pay under the terms of the policy, given this court's previous ruling that

such coverage exists, but disputes whether Youth Alive has made sufficient allegations to support

its bad faith claim under the second two *Wittmer* elements. 864 S.W.2d at 890.  Philadelphia

Indemnity argues that it did not in fact "deny" Youth Alive's claim and that it did not lack a

"reasonable basis in law or fact" for contesting coverage.  *Id*.

First, Philadelphia Indemnity argues that the claim should be dismissed because it did not

"deny" Youth Alive's claim.  Philadelphia Indemnity asserts that it provided a defense to Youth

Alive and settled the claims against Youth Alive.  The Counterclaim states that Philadelphia

Indemnity undertook Youth Alive's defense in the underlying action against it, negotiated a

settlement, and secured a dismissal of all claims against Youth Alive.  (DN 81, First Amended

Counterclaim, at 17, 79-81).  However, Youth Alive argues that Philadelphia Indemnity's conduct

does in fact amount to a denial because of Philadelphia Indemnity's delay in negotiating the

settlement.  (DN 81 at ¶¶ 78, 80, 82, 84-85).

The Kentucky Supreme Court has held that absent a denial, there can be no damage and thus no actionable claim for bad faith. *See e.g., Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997). As set forth in *Wittmer*, a "denial" of a claim is a key prerequisite to establishing a *prima facie* cause of action for bad faith. 864 S.W.2d at 890. The Kentucky Supreme Court has held that a "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Glass*, 99 S.W.2d at 452.

Youth Alive admits that Philadelphia Indemnity undertook the defense of Youth Alive in the underlying tort actions against it, immediately investigated the claims, participated in settlement negotiations, and did settle the claims by making payments in order to obtain a dismissal of all claims against Youth Alive. Philadelphia Indemnity did issue reservation of rights letters while defending Youth Alive and also filed this action to have the coverage issues determined by the court. However, Philadelphia Indemnity paid and settled the claims against Youth Alive before this court determined that coverage existed under the CGL Policy. Even taking all of the allegations of the Amended Counterclaim as true, we hold that because Kentucky law requires a "denial" of a claim to support a bad faith cause of action, Youth Alive's bad faith claim must fail here, as it cannot prove that Philadelphia Indemnity "denied" its claim. *See Wittmer*, 864 S.W.2d at 890.

Philadelphia also argues that Youth Alive's claim for bad faith should be dismissed because it had a "reasonable basis in law or fact" for contesting coverage under the CGL Policy. *Wittmer*, 864 S.W.2d at 890. Under Kentucky law, "an insured's claim of bad faith must fail where the claim is 'fairly debatable' on the law or the facts." *Cowan v. Paul Revere Life Ins. Co.*, 30 Fed. Appx. 384 (6th Cir. 2002). If a claim is "fairly debatable," an "insurer is entitled to debate [a] claim regardless of whether the debate concerns a matter of fact or one of law." *Empire Fire & Marine Ins. Co. v.*

*Simpsonville Wrecker Serv.*, *Inc.*, 880 S.W.2d 886, 889-90 (Ky. App. 1994).  It is established under Kentucky law that an insurer is entitled "to challenge a claim and litigate it if the claim is debatable on the law or the facts."  *Wittmer*, 864 S.W.2d at 890; *see also Stine v. State Farm*, 2009 WL 2761738, * 1, 2009 U.S. Dist. LEXIS 114689 (W.D. Ky. Dec. 9, 2009) (holding that the "well-established law of Kentucky" entitles the insurer to litigate the issue where there is a fairly debatable issue of coverage).

In *Empire Fire*, the Kentucky Court of Appeals discussed a case where coverage was disputed and the plaintiff's claim was denied by the insurer.  880 S.W.2d 886.  The coverage issue was litigated and after the court declared coverage existed, the insurer paid the claim.  *Id.* at 887. The case then proceeded to trial on the plaintiff's bad faith claims and on appeal, the Kentucky Court of Appeals held that the claim should not have been submitted to the jury.  *Id.* at 888-90.  The Court stated that "[i]f a genuine dispute does exist as to the status of the law governing the coverage question, the insured's claim is fairly debatable and the tort claim for bad faith based upon the insurer's refusal to pay the claim may not be maintained."  *Id*.  The Court further explained that often coverage questions are debatable and "where there is a legitimate first-impression coverage question for purposes of Kentucky law and recognized authorities support the insurer's position in denying coverage, the insured's claim is fairly debatable as a matter of law and will not support a claim for bad faith."

Although we ultimately disagreed with the position Philadelphia Indemnity took in finding that Lee was a "volunteer worker" or "club member" under the policy, we find that this issue was "fairly debatable under the law."  *See Id.* at 889-90.  The issue of whether a participant in a youth group who is asked to perform a task benefitting other youth participants was a "volunteer worker"

- 11 -

under an insurance policy was not previously addressed under Kentucky law.  In its motion papers,

Philadelphia Indemnity cited to several authorities from other circuits, attempting to persuade this

court that Lee was a "volunteer worker" or "club member" under the policy.  We find that the law

was "fairly debatable" and a bad faith claim cannot be maintained against Philadelphia Indemnity

for this reason also.  The fact that Philadelphia Indemnity did not ultimately prevail is neither

determinative of whether it acted with bad faith nor whether its contention raised a fairly debatable

issue.

An order consistent with this opinion will be entered this date.


May 29, 2012



**Charles R. Simpson III, Judge**
**United States District Court**



D02